CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
June 04, 2025
LAURA A. AUSTIN, CLERK
BY s/ S. MELVIN
   DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| JAMES J. CONDON<br><br>*Plaintiff*<br><br>v.<br><br>ASSOCIATED UNIVERSITIES, INC.,<br><br>*Defendant.* | CASE NO. 3:24-cv-00063<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff James J. Condon ("Dr. Condon") sues for retaliation under Title VII (Count I) and for violation of the Virginia Fraud and Abuse Whistle Blower Protection Act ("VFAWPA") (Count II). Dkt. 1. Defendant Associated Universities, Inc. ("AUI") moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Dkt. 11. Because Dr. Condon has not alleged facts sufficient to establish an employer/employee relationship, the Court grants AUI's motion (Dkt. 11). However, Dr. Condon is granted leave to amend his Complaint as to Count I.

## I. Legal Standard

A party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). Rule 12(c) motions are designed to dispose of cases when material facts are not in dispute and the court can judge the case on its merits considering only the parties' respective pleadings, Fed. R. Civ. P. 7(a), judicially noticed facts or matters of public record, and documents attached as exhibits to the pleadings or to the Rule 12(c) motion that are integral to the complaint and authentic. *Atl. Specialty Ins. Co. V. Bindea,* 632 F. Supp. 3d 681, 693 (W.D. Va. 2022). Courts apply the same standard that is applied to Rule 12(b)(6) motions to Rule 12(c) motions for judgment on the pleadings. *Id.*

1

To prevail on a Rule 12(c) motion, the moving party must show that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Id.* A fact is material if it might affect the outcome of the suit under the governing law. *Id.* The court generally must view the facts presented in the pleadings and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Id.* Nevertheless, it need not accept factual allegations or denials that clearly contradict the nonmoving party's own pleadings. *Id.*

II. **Facts**[1]

AUI is a not-for-profit 501(c)(3) corporation headquartered in Washington, D.C. Dkt. 1 ¶ 8. Dr. Condon is an astronomer who worked for AUI at its National Radio Astronomy Observatory ("NRAO") in Charlottesville, Virginia, from 1979 until his retirement in March 2021. *Id.* ¶ 1. AUI operates NRAO, a facility funded by the National Science Foundation to provide state-of-the-art radio telescopes, instrumentation, and data-analysis software to the international scientific community. *Id.* During his employment, Dr. Condon also taught a radio astronomy course for graduate students at the University of Virginia. *Id.* ¶ 2.

To remain competitive with universities in recruiting PhD-level scientific staff, the NRAO offers applicants the possibility of tenure, a status Dr. Condon held prior to his retirement. *Id.* In April 2015, Dr. Condon successfully passed his post-tenure review which concluded that he had "clearly earned an Emeritus appointment when the appropriate time comes." *Id.*

NRAO's Scientific Staff Policy Manual describes an emeritus appointment:

> On recommendation of the Director, members of the scientific staff who elect full retirement but wish to continue their research and other professional activities may be granted the status of Emeritus Scientist by the AUI Board of Trustees. *Emeritus Scientists receive*

---

[1] Under the Rule 12(b)(6) standard, the court is obligated "to assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Accordingly, the statement of facts is primarily drawn from the Complaint.

> *no salary and have no service obligations* to the Observatory, but may be asked to assist with specific programs consistent with their expertise. As scientific staff members, they have restricted access to research support and the opportunity to apply for external grants. The level of support provided by the Observatory will be reviewed on a regular basis and will be commensurate with the level of professional activity by the appointee.

Dkt. 3-5 (emphasis added). Via letter dated November 18, 2020, the AUI Board of Trustees granted Dr. Condon an Astronomer Emeritus appointment effective upon his March 26, 2021 retirement. *Id.* ¶¶ 3, 9. The letter of appointment stated:

> I am very pleased to inform you that . . . the Board unanimously approved your appointment as Astronomer Emeritus . . . The Trustees and I extend our gratitude to you for your long and distinguished service to the National Radio Astronomy Observatory and to AUI after a career spanning almost five decades. Your work . . . continues to make significant contributions to the field of radio astronomy.
>
> *As Astronomer Emeritus, you will not have any specific obligations to the Observatory*, and while you are involved in research activities, we will provide you access to scientific facilities, support for travel and publications, and the opportunity to apply for outside grants on the same basis as regular scientific staff members. Similar to active employees, you will be required to complete successfully all mandatory annual trainings and follow general workplace requirements.
>
> We wish you well in your retirement and look forward to our continuing relationship. AUI thanks you for your many years of dedicated service to NRAO.

*Id.* ¶¶ 3, 9, 10; Dkt. 3-1 (emphasis added). As an Astronomer Emeritus, Dr. Condon retained all of the rights of tenured astronomers such as office space, company email, facility and equipment access, IT support, funding for research and travel, and payment of publication fees. *Id.* ¶ 10. In exchange, he did not owe AUI any service obligation but was required to comply with "all mandatory and annual trainings and follow general workplace requirements." *Id.*

3

On September 14, 2022, eighteen months into his retirement, Dr. Condon sent an email to scistaff@nrao.edu, a listserv that included NRAO employees as well as third party members of the scientific community. In the email, Dr. Condon expressed opposition to what he believed to be NRAO's unconstitutional hiring policies and Diversity, Equity and Inclusion (DEI) programs which used race or sex as a basis for decision-making. *Id.* ¶ 4; *see also* Dkt. 3 ¶ 4. His email stated, *inter alia*:

> Unfortunately, most of NRAO's DEI programs have used 'broaden participation' to justify illegal and unethical discrimination by race, sex, and sexual orientation/identity…I am appalled by the NRAO's expanding and increasingly blatant discriminatory DEI policies, and I am further concerned they will be embedded in the new scientific manual. I wrote a detailed memo describing and documenting the history of institutional discrimination at the NRAO and can provide a copy on request. Beware, however, that questioning official discrimination at the NRAO may lead to career-ending retaliation.[2]

Dkt. 1 ¶ 20. The next day, on September 15, 2022, NRAO director Tony Beasley sent an email to the listserv stating in part:

> On September 14th there was an egregious use of the scistaff email list/exploder by a retired member of staff. The purpose of these topical email lists is to support professional communications . . . not for expressing a set of negative highly-personal opinions about the Observatory mission or policies, or to disparage other members of the staff.

Dkt. 3-4. The email explained that the listserv was disabled to allow "analysis of the situation." *Id.* Dr. Condon interpreted the email as "suggesting that he had disparaged members of the staff . . ." Dkt. 1 ¶ 19. According to Dr. Condon, Mr. Beasley's email "suggested that Dr. Condon's email had potentially created a hostile work environment merely because he had politely disagreed in good faith with AUI policies which he believed to be discriminatory." *Id.*

---

[2] AUI included the full text of Dr. Condon's email as Exhibit 3 to its motion. Dkt 3-3.

At a September 22-23, 2022 board meeting, the AUI Board of Trustees voted to terminate Dr. Condon's Astronomer Emeritus appointment. Dkt. 1 ¶ 4. On November 4, 2022, Dr. Condon received a letter from AUI President Adam Cohen officially revoking his status as Astronomer Emeritus. *Id.* ¶ 20. The letter provided no explanation for the decision. Dkt. 3-2.

Dr. Condon concluded that AUI revoked his emeritus status in retaliation for his September 14, 2022 email. He submitted a Charge of Discrimination to the EEOC and was issued a "Right to Sue" letter. Dkt. 1 ¶ 6. Dr. Condon alleges retaliation under 42 U.S.C. § 2000-Title VII (Count I) and violation of the Virginia Fraud and Abuse Whistleblower Protection Act § 2.2-3011 ("VFAWPA") (Count II). He claims various harms including pain and suffering, loss of enjoyment of life, damages to his professional reputation and career, and the inability to use NRAO's facilities and research tools to engage in his research. *Id.* ¶ 36. He demands compensatory and punitive damages, legal fees and equitable relief including restoration of his Astronomer Emeritus position. *Id.* at ¶ 14 a)-d).

### III. Discussion

#### A. Count I (Title VII): Dr. Condon has not alleged facts sufficient to demonstrate an employer/employee relationship for purposes of Title VII.

Title VII prohibits an employer from discriminating against "any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3. The Fourth Circuit has noted:

> As the text makes clear, the protections of Title VII's anti-discrimination and anti-retaliation provisions extend only to employees. In focusing on employees, and the terms and conditions of employment, Congress chose to protect those least able to combat the effects of invidious discrimination in the workplace. The

5

> threshold inquiry in any Title VII case must, therefore, be whether the plaintiff alleging unlawful discrimination or retaliation is, in fact, an employee.

*Lemon v. Myers Bigel, P.A.,* 985 F.3d 392, 396 (4th Cir. 2021). Accordingly, the court must first determine whether Dr. Condon was an "employee" of AUI.

AUI argues that Dr. Condon was not an employee for the purposes of Title VII when he expressed opposition to AUI's DEI programs since he had been retired for a year and a half. Dkt. 12 at 1-2. According to AUI, further indicia that no employer/employee relationship existed are the facts that Dr. Condon provided no service to AUI, received no compensation, and that AUI had no control over Dr. Condon's work. *Id.* In response, Dr. Condon argues that the determination of whether he was an employee under Title VII and the VFAWPA is a question of fact rather than law that the Court cannot determine on the pleadings. Dkt. 13 at 3, 6.

Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(b). Unfortunately, this definition is "short on substance." *Lemon,* 985 F.3d at 396. It is "completely circular and explains nothing." *Id. (*citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). Case law is therefore helpful in defining the term.

The leading Fourth Circuit case analyzing a plaintiff's status as an "employee" is *Haavistola v. Community Fire Co. of Rising Sun*, 6 F.3d 211 (4th Cir. 1993). The *Haavistola* Court adopted a two-part test to determine whether someone is an "employee" for the purposes of Title VII. First, the individual must establish the existence of an employment relationship by showing that he or she received *compensation* in exchange for a *service provided* to the employer. *Haavistola*, 6 F.3d at 221–22 (emphasis added); *see also Graves v. Women's Pro. Rodeo Ass'n, Inc.*, 907 F.2d 71, 73 (8th Cir. 1990) ("Central to the meaning of [employee] is the idea of compensation in exchange for services: an employer is someone who pays, directly or indirectly,

6

wages or a salary or other compensation to the person who provides services-that person being the employee.") The issue in *Haavistola* concerned the compensation aspect of the relationship, and the court determined that the issue of compensation turns on whether the benefits received constitute "significant remuneration" or, conversely, are merely "inconsequential incidents of an otherwise gratuitous relationship." *Haavistola,* 6 F.3d at 222.

Only if an employment relationship is established does the inquiry shift to "analyzing the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test." *Id* at 219–220 (quoting *Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 981 (4th Cir. 1983)). This standard is commonly referred to as the "hybrid" test. *See Butler v. Drive Auto. Indus. Of Am., Inc.*, 793 F.3d 404, 412 (4th Cir. 2015). Under the hybrid test, the principal inquiry is the employer's right to control the "means and manner" of the worker's performance. *See, e.g. Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 190 (4th Cir. 1998).

> In addition to control, courts also consider the following factors:
>
> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision;
>
> (2) the skill required in the particular occupation;
>
> (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work;
>
> (4) the length of time during which the individual has worked;
>
> (5) the method of payment, whether by time or by the job;
>
> (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation;

7

(7) whether annual leave is afforded;

(8) whether the work is an integral part of the business of the "employer;"

(9) whether the worker accumulates retirement benefits;

(10) whether the "employer" pays social security taxes; and

(11) the intention of the parties.

*Smith v. CSRA,* 12 F. 4th 396, 412-413 (4th Cir. 2021) (citing *Garrett,* 721 F.2d at 982). So, while control is the most important factor to be considered, it is not dispositive. *Id., see also Butler*, 793 F.3d at 409 (no one factor is determinative, but "the Fourth Circuit has consistently focused on control").

Here, Dr. Condon alleges that he received benefits from AUI: access to facilities and equipment, research support, office space, an email address, and IT support. The Court declines to rule at this point as to whether these benefits constitute "significant remuneration" or are "inconsequential incidents of an otherwise gratuitous relationship." *Haavistola,* 6 F.3d at 222. However, in addition to compensation, putative employees must also show that the compensation was *received in exchange for a service provided* to the employer. *See Graves,* 907 F.2d at 73. Where a relationship entails no duty of service, the relationship bears no resemblance to that of employer/employee. *Id.* Dr. Condon has not sufficiently alleged what service, if any, he provided to AUI.

Additionally, Dr. Condon has not alleged sufficient facts that would allow the Court to proceed to the next step of applying the hybrid test including facts relating to AUI's ability to control Dr. Condon's work and the factors noted above. Accordingly, AUI's motion will be granted as to Count I, but Dr. Condon will be granted leave to amend his Complaint to correct these deficiencies.

B. **Count Two: The Virginia Fraud and Abuse Whistle Blower Protection Act Va. Code Ann. § 2.2-3011 is Inapplicable to the Facts Alleged.**

Pursuant to the Virginia Fraud and Abuse Whistle Blower Protection Act § 2.2-3011 ("VFAWPA"), no employer may discharge, threaten or otherwise discriminate or retaliate against a whistle blower. Va. Code Ann. § 2.2-3011. The intent of the statute is that "citizens of the Commonwealth and employees of governmental agencies be freely able to report instances of wrongdoing or abuse *committed by governmental agencies . . .*" Va. Code. Ann. § 2.2-3009 (emphasis added). A "whistle blower" is an employee who witnesses wrongdoing and makes a good faith report of such wrongdoing to a superior. Va. Code Ann. § 2.2-3010.

The VFAWPA defines an employee as "any person who is regularly employed full time on either a salaried or wage basis, whose tenure is not restricted as to temporary or provisional appointment, in the service of and whose compensation is payable . . . *by a governmental agency*." Va. Code Ann. § 2.2-3010 (emphasis added). "Governmental agency" means (i) any agency, institution, board, bureau, commission, council, or instrumentality of state government in the executive branch listed in the appropriation act and any independent agency; (ii) any county, city, or town or local or regional governmental authority; and (iii) any local school division as defined in § 22.1-280.2:2. For the purposes of the statute, governmental agencies are only those instrumentalities of the state or "any county, city, or town or local or regional governmental authority." Va. Code Ann. § 2.2-3011(A); *see Silverman v. Town of Blackstone*, Va., 843 F. Supp. 2d 624, 627 (E.D. Va. 2011) ("Clearly, the [VFAWPA] only provides protection to employees of state agencies.").

Dr. Condon has not and cannot plausibly allege that he was employed full time on either a salaried or wage basis. Rather, throughout the Complaint, he states clearly that he is retired. *See, e.g.* Dkt. 1 ¶ 1. He does not allege that he received salary or wages. Dr. Condon also does not allege

9

that AUI is a governmental agency. Rather, he states that AUI is a non-profit organization. *Id.* at ¶8. AUI is not part of any instrumentality of the state listed in the appropriation act. *See* Va. Acts of Assembly, H.B. 1600, Ch. 725 (2025). Dr. Condon's allegation that AUI receives government funding is not sufficient to convert AUI to a state or local governmental agency. Because he was not an employee and AUI is not a governmental agency, Dr. Condon cannot state a claim under the VFAWPA. Count II will be dismissed.

### IV. Conclusion

Because Dr. Condon has not sufficiently alleged an employment relationship under Title VII, AUI's motion to dismiss (Dkt. 11) will be GRANTED in an accompanying order, but Dr. Condon will be granted leave to amend his Complaint as to Count I. Count II is dismissed as the VFAWPA, Va. Code Ann. § 2.2-3011, is inapplicable.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion to all counsel of record.

Entered this __4th__ day of June, 2025.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE